**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
ANTHONY LEWIS,                                )
                                              )
                          Plaintiff,          )
                                              )
            v.                                )          Civil Action No. 09-0746 (RBW)
                                              )
UNITED STATES DEPARTMENT OF JUSTICE,          )
                                              )
                          Defendant.          )
_____     )


<u>**MEMORANDUM OPINION**</u>


The plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 (2010), and the Privacy Act, 5 U.S.C. § 552a (2010), demanding the release of certain

records maintained by four components of the United States Department of Justice ("DOJ").[1]

This matter is currently before the Court on the defendant's motion for summary judgment.[2] For

_____

[1]      The United States District Court for the Middle District of Florida, Tampa Division, and the Clerk of the Court for Hillsborough County, Florida, have been dismissed as party defendants, the plaintiff's demand for mandamus relief was denied, and the party defendant remaining in this action is the DOJ. Order, _Lewis v. U.S. Dep't of Justice_, Civ. No. 09-0746 (D.D.C. Apr. 23, 2009).

[2]      The defendant moves to dismiss the complaint in part under Federal Rule of Civil Procedure 12(b)(6) on the ground that the plaintiff failed to exhaust his available administrative remedies with respect to his FOIA requests to the Drug Enforcement Administration, or alternatively, that some of his claims are time-barred. Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss in Part, and Alternatively, for Summary Judgment ("Def.'s Mem.") at 18-20. In addition, it moves to dismiss the complaint as to DOJ's Civil Division on the ground that the plaintiff failed to exhaust his available administrative remedies. _Id_. at 37-38. Because "matters outside of the pleadings are presented to and not excluded by the court," Fed. R. Civ. P. 12(d), the defendant's motion is treated as one for summary judgment under Federal Rule of Civil Procedure 56. The motion to dismiss therefore will be denied.

(continued...)

the reasons that follow, the Court will grant the motion in part and deny it in part.

## I.  BACKGROUND

### A.  *Executive Office for United States Attorneys ("EOUSA")*

The plaintiff submitted a FOIA request to the United States Attorney's Office for the

Middle District of Florida, which referred the request to the EOUSA for processing.

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss in Part, and

Alternatively, for Summary Judgment ("Def.'s Mem."), Declaration of David Luczynski

("Luczynski Decl.") ¶ 4.  He sought the following information:

> [A]n expedicted [sic] copy of "all" compliants [sic], affidavits, and
> other documents filed with the United States Attorney General Janet
> Reno in 1993-1994 and the Office of Enforcement Operations, seeking
> authorization to intercept telephone communications of Anthony
> Lewis . . . which were filed by the Prosecuting Assistant U.S. Attorney
> . . . [and] a copy of the authorization from Janet Reno, giv[ing] the
> prosecuting attorney authority to obtain [a] Judicial order to intercept
> telephone communications . . . and the judicial orders from the judge
> issued to the prosecuting attorney.

*Id.*, Luczynski Decl., Exhibit ("Ex.") A (September 21, 2008 Privacy Act Identification and

--------------------------------------------------

[2](...continued)
In addition, the plaintiff's Request for Correction of Clear Error and a Void Judgment in
Reference to the Denial of Plaintiff's Request for Summary Judgment and Appointment of
Counsel [Dkt. #26], Motion for Judgment on the Pleadings [Dkt. #31], Request for the Court to
Take Mandatory Judicial Notice in Concert with Request for the Inherent Powers [Dkt. #36],
Petitioner's Request for the Court to Take Mandatory Judicial Notice in Concert with his Request
for the Court's Inherent Powers in Equity [Dkt. #37], Petitioner's Request for Recusal of the
[Pr]esiding Judge and Reassignment of the Case, in Concert with Petitioner's Request for the
Court's Inherent Powers, in the Event a Transfer of the Case Occurs [Dkt. #38], Petitioner's
Request for the Inherent Power of the Court in Equity to Vacate the Judgment [Dkt. #39] and
Petitioner's Request for the Court and Assistant United States Attorney to Effect Their Fiduciary
Duty and Obligation to Report Crimes Involving Government Officers and Employees [Dkt. #43]
are all meritless and also will be denied.

Lastly, in light of the plaintiff's *pro se* status, the Court will deny the defendant's Motion
to Strike Plaintiff's Surreply [Dkt. #35].

Request Form) at 2. The EOUSA responded to the request, which had been assigned Request No. 08-3328, by releasing 35 pages of records in full and 6 pages in part after having redacted certain information under FOIA Exemption 7(C). *Id.*, Luczyinski Decl. ¶¶ 5-6; *see id.*, Ex. C (December 10, 2008 letter from W.G. Stewart II, Assistant Director, Freedom of Information/Privacy Act Staff, EOUSA, DOJ) at 1. In addition, the EOUSA referred 59 pages of records to the Drug Enforcement Administration, the DOJ entity from which these records originated. *Id.*, Ex. C at 2.[3]

### B. *Office of Professional Responsibility ("OPR")*

In his FOIA request to the OPR, the plaintiff sought:

> 1).     [A] complete copy of the file [regarding] the complaint [the plaintiff] filed against Assistant U.S. Attorney Jack Fernandez, Middle District of Florida, Tampa Division, which was filed in the year 1995, 1996, or 1997.

> 2).     [T]he complaint filed against Jack Fernandez, Jack Fernan[d]ez's response to the complaint, the investigative documents from the investigation, any and all documents from individuals interviewed or contacted in reference to the complaint, and documents of the findings of the complaint, including the sanctions imposed as well as the outcome of the complaint and investigation.

> 3).     [A]ny and all related documents from cases or investigations associated with the complaint and investigation in reference to Jack Fernandez.

Def.'s Mem., Vaughn Declaration of Patricia Reiersen ("Reiersen Decl."), Ex. A (June 17, 2004 FOIA Request). The OPR's search yielded three files containing 54 documents responsive to the

---

[3]     The plaintiff suggests that the referral of records from the EOUSA to the DEA was done intentionally in order to avoid disclosure of the records. *See* Plaintiff's Opposition [to] the Defendant's Request for Dismissal of the Civil Action and Alternatively for Summary Judgment on the Pleadings ("Pl.'s Opp'n") at 14. However, such a referral is contemplated under the FOIA. *See* 5 U.S.C. § 552(a)(6)(B)(iii)(III); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1118 (D.C. Cir. 2007).

request.  *Id.*, Reiersen Decl. ¶ 6.  Of these 54 documents, five were deemed duplicates, and four

originated at the EOUSA.  *Id.*  The OPR referred the four EOUSA documents to the EOUSA for

its direct response to the plaintiff.  *Id.*  The OPR released to the plaintiff 18 documents in full and

27 documents in part, after having redacted certain information under FOIA Exemptions 2, 6 and

7(C).  *See id.* ¶¶ 12-19.

### C.  Drug Enforcement Administration ("DEA")

The DEA's records include "several direct requests and referrals that relate to the

plaintiff."  Def.'s Mem., Decl. of William C. Little, Jr. ("Little Decl.") ¶ 16.  The declarant

explains that the DEA's FOIA request files are destroyed after six years, and information

regarding the plaintiff's first three requests "was extrapolated from the E-FOIA case management

system," *id.* ¶ 17 n.1, a internal computer-based system used to identify, track and locate FOIA

requests, *id.* ¶ 15.

### 1.  DEA FOIA Request Number ("No.") 95-0263-F

The plaintiff "requested information related to third-parties," and the DEA closed the case

related to this request administratively because "the plaintiff failed to provide release

authorizations, as requested, from any third-party."  *Id.* ¶ 17.  The plaintiff did not appeal this

determination administratively to the Office of Information and Privacy ("OIP"), *id.* ¶ 18, the

office responsible for handling appeals of adverse FOIA determinations made by DOJ

components.  *See* 28 C.F.R. § 16.9.

### 2.  DEA FOIA Request No. 96-0264-P

In this second request, the plaintiff requested information about himself.  *Id.* ¶ 19.  The

DEA closed the case concerning this request on April 30, 1996, after it had released 299 pages of records and withheld 77 pages of records in their entirety relying on FOIA Exemptions 2, 7(C), 7(D), and 7(F). *Id.* The plaintiff also failed to appeal this determination administratively to the OIP. *Id.* ¶ 20.

### 3. DEA FOIA Request No. 98-1218-F

The plaintiff's third request was for records pertaining to the seizure of property. *Id.* ¶ 21. The DEA released 288 pages of records in response to this request, but withheld certain information under FOIA Exemptions 2, 7(C), and 7(F). *Id.* Again, the plaintiff did not appeal this determination administratively to the OIP. *Id.* ¶ 22.

### 4. DEA FOIA Request No. 04-0699-F

In correspondence addressed to the DEA's Internal Affairs Office, the plaintiff requested the following information:

> 1). Any and all notes, investigative information, resources for information, end results of invest[ig]ation and complaint in reference to Agents Tom Feeney and Dale VanDorple, from compliant [sic] filed by Anthony Lewis in reference to the agents['] involvement with illegally intercepted telephone communications.

> 2). Any and all notes, investigative information, resources for information, end results of investigation and complaint in reference to Agents Tom Feeney and Dale VanDorple, from any and all other past complaints and investigations of Agents Feeney and VanDorple.

Def.'s Mem., Little Decl., Ex. A (January 15, 2004 FOIA request) at 2. The DEA notified the plaintiff that, before processing the request, he must "submit a statement expressing his intent to pay all fees incurred while processing his request." *Id.* ¶ 24. Absent the plaintiff's commitment to pay these fees, the DEA advised the plaintiff that he would "be afforded two (2) hours of search [time] and 100 pages of duplication at no charge." *Id.*, Ex. B (February 24, 2004 letter

from K.L. Myrick, Chief, Operations Unit, FOI/Records Management Section, DEA). There is no record that the plaintiff appealed this decision to the OIP. *Id.*, Little Decl. ¶ 26.

On September 11, 2009, after this civil action had been filed, the DEA released 49 pages of records in their entirety and one page in part. *Id.* ¶ 27. The DEA neither confirmed nor denied that information pertaining to Feeney and VanDorple existed. *Id.* ¶ 28.

5. DEA FOIA Request No. 09-0187-F

The plaintiff requested information about himself, Def.'s Mem., Little Decl. ¶ 29, and in later correspondence clarified his request as one seeking:

> 1) Any and all documents relevant to Anthony Lewis and the Internal Affairs complaint filed against Agents Tom Feeney and Dale VanDorple in 2004 (investigated by Pat Stancamp).
>
> 2) Any and all documents relevant to the Investigation of Tom Feeney and Dale VanDorple as a result of the Internal Affairs complaint filed by Anthony Lewis.
>
> 3) Any and all documents relevant to the findings of the Internal Affairs complaint filed against Tom Feeney and Dale VanDorple after complaint filed by Anthony Lewis.
>
> 4) Any and all documents relevant to Internal Affairs investigation of Tom Feeney and Dale VanDorple, complaint made by Anthony Lewis, relevant and not requested above.

*Id.*, Little Decl., Ex E (October 29, 2008 FOIA request) at 2. The DEA responded to this request by refusing to confirm or deny the existence of responsive records regarding Feeney and VanDorple. *Id.*, Little Decl. ¶ 32. With respect to the remaining portions of the request, the DEA "forwarded tasking memoranda to program[] areas within DEA that would be best suited, or would likely have records that would be responsive." *Id.* The plaintiff did not appeal these actions to the OIP. *Id.* ¶ 33.

The EOUSA referred 59 pages of records to the DEA for its direct response to the

plaintiff's FOIA request, *id*. ¶ 34, and these pages "consisted of an unsigned document . . .

prepared by a DEA special agent," *id*., which apparently was a draft affidavit in support of an

application for a court order authorizing interception of the plaintiff's wire communications, *id*.

n.6. On April 7, 2009, the DEA notified the plaintiff of its decision to withhold these 59 pages in

their entirety under FOIA Exemptions 3, 7(C), 7(D), and 7(F). *Id*. ¶ 36. The plaintiff also failed

to appeal this determination administratively to the OIP. *Id*. ¶ 37.

In total, the DEA processed 109 pages of records (59 pages referred by the EOUSA and

50 pages located in OPR files) in response to DEA FOIA Request Nos. 04-0699-F and 09-0285-P.

*Id*. ¶ 58. Of the OPR records, the DEA released 49 pages in their entirety and released one

redacted page. *Id*. Of the records referred by the EOUSA, the DEA withheld all 59 pages in their

entirety. *Id*.

### D. Civil Division

The plaintiff filed an administrative claim with the DOJ under the Federal Tort Claims Act

("FTCA"), *see* 28 U.S.C. §§ 1346, 2671-80 (2009), on or about October 4, 2004, Compl. at 5,

based on his allegedly illegal arrest, detention, prosecution, conviction and incarceration "as a

direct, proximate and foreseeable result of agents and officers of the [DEA] . . ., [t]he United

States Attorney[']s Office, the U.S. District Court, and the Eleventh Circuit Court of Appeals, by

their acts of racial discrimination in targeting blacks[.]" Compl., Ex. D (FTCA claim). He "filed

a FOIA . . . request with the Federal Tort Claims Act staff (FTCAS)" of the DOJ after he filed the

---

[4]         The plaintiff claims that the EOUSA's referral of records to the DEA "was done
intentionally without release and disclosure to the plaintiff." Pl.'s Opp'n at 14.

administrative claim "for the purpose of obtaining documentation being reviewed on the investigation of his tort claim[.]" Compl. at 5. According to the plaintiff, he did not receive a response to this FOIA request. *Id.*

The Court presumes that by naming "Torts Branch, Civil Division, United States Department of Justice" as a party defendant, *see* Compl. at 1 (caption), the plaintiff's FOIA request regarding his FTCA claim was directed to the DOJ's Civil Division. *See* Def.'s Mem. at 1 (explaining that the "Federal Torts Claims Act" staff to which the plaintiff refers is part of the DOJ's Civil Division). The defendant states that a search of the Civil Division's records "failed to identify any request for access to records from plaintiff Anthony Lewis." Def.'s Mem., Declaration of James M. Kovakas ("Kovakas Decl.") ¶ 4.

## II. DISCUSSION

### A. Summary Judgment Standard of Review

The Court will grant a motion for summary judgment if the pleadings, the discovery and disclosure materials on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[A] material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on an element of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations or documentary evidence to the contrary. *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992).

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. Cent. Intelligence Agency*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

In opposing a summary judgment motion, a party may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (citation and internal quotation marks omitted). "[A] plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents." *Schoenman v. Fed. Bureau of Investigation*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) (citations omitted).

### B. Exhaustion of Administrative Remedies

Before seeking judicial review under the FOIA, a requestor of information is generally required to exhaust his administrative remedies. *Wilbur v. Cent. Intelligence Agency,* 355 F.3d

675, 677 (D.C. Cir. 2004) (per curiam); *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995); *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61-62 (D.C. Cir. 1990). Generally, a requester exhausts his administrative remedies with respect to a request made to the DOJ by filing a proper FOIA request directly to the FOIA office of the DOJ component that maintains the desired records, *see* 28 C.F.R. § 16.3(a), and by appealing an adverse determination administratively to the OIP, *see* 28 C.F.R. § 16.9(a). Exhaustion affords "the agency . . . an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision." *Wilbur*, 355 F.3d at 677 (quoting *Oglesby*, 920 F.2d at 61) (internal quotation marks omitted). Exhaustion under FOIA is not a jurisdictional requirement, *Hidalgo v. Fed. Bureau of Investigation,* 344 F.3d 1256, 1258 (D.C. Cir. 2003), but instead is a prudential consideration. *Wilbur,* 355 F.3d at 677. However, a FOIA suit generally cannot proceed if a plaintiff fails to exhaust his administrative remedies. *See Hidalgo*, 344 F.3d at 1260 (remanding with instruction for district court to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to exhaust); *Dettmann v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986).

      1. The Plaintiff Failed to Exhaust his Administrative Remedies with Respect to
          Request Nos. 95-0263-F, 96-0264-P, and 98-1218-F.

The defendant argues that because the plaintiff did not appeal the DEA's responses to his six FOIA requests by pursuing administrative appeals to the OIP, these claims are subject to dismissal for failure to exhaust available administrative remedies. Def.'s Mem. at 19; *see id.*, Little Decl. ¶¶ 18 (Request No. 95-0263-F), 20 (Request No. 96-0264-P), 22 (Request No. 98-1218-F), 26 (Request No. 04-0699-F), 33 (Request No. 09-0187-P), and 37 (Request No. 09-0285-P). The plaintiff acknowledges that "he did not seek an appeal from some of the agencies after being denied documents," Plaintiff's Opposition [to] the Defendant's Request for Dismissal

of the Civil Action and Alternatively for Summary Judgment on the Pleadings ("Pl.'s Opp'n") at

19-20, and he also points to no evidence in the record to show that he pursued an administrative

appeal of these six requests.  Instead, he argues that his failure to exhaust his administrative

remedies "presented no risk of undermining the purposes and policies underlying the exhaustion

requirement."  *Id.*  The plaintiff opines that the Court "is not precluded under these circumstances

from deciding the merits of [his] claims notwithstanding his failure to comply with the FOIA

appeal process."  *Id.*  Further, the plaintiff argues that because his requests "sought documents to

reveal government wrongdoing, criminal acts and misconduct, the process should proceed

forward."  Plaintiff's Opposition to the Defendant's Reply to Plaintiff's Opposition to the

Defendant's Request for a Motion to Dismiss In Part, and Alternatively, for Summary Judgment,

with Request for Judgment on the Pleadings ("Pl.'s Surreply") at 14.  The Court is not persuaded

by the plaintiff's arguments, at least with respect to Request Nos. 95-0263-F, 96-0264-P, and 98-

1218-F.  At a minimum, the OIP has had no opportunity to review the DEA's initial responses to

three of the plaintiff's six FOIA requests, and therefore the plaintiff and the Court are deprived of

the "the agency's experience and expertise" as well as having a more complete record for review.

*Wilbur*, 355 F.3d at 677.

The DEA provided no substantive response to Request Nos. 04-0699-F, 09-0187- P, and

09-0285-P until after the plaintiff had filed this lawsuit.  *See* Def.'s Mem., Little Decl., Ex. C

(September 11, 2009 letter from W.C. Little, Jr., Senior Attorney, Administrative Law Section,

Office of Chief Counsel, DEA, regarding Request No. 04-0699-F), Ex. G (February 4, 2009 letter

from K.L. Myrick regarding Request No. 09-0187-P) and Ex. J (April 7, 2009 letter from K.L.

Myrick regarding Request No. 09-0285-P).  Accordingly, at this stage of the proceedings, it is not

reasonable to expect the plaintiff to exhaust his administrative remedies by filing an appeal to the OIP, and the law does not require him to do so.[5]

2. The Plaintiff Failed to Submit a Proper FOIA Request to the Civil Division

A requester who fails to submit a proper FOIA request has not exhausted his administrative remedies, *see Thomas v. FCC*, 534 F. Supp. 2d 144, 146 (D.D.C. 2008), and an agency is under no obligation to respond "until it has received a proper FOIA request in compliance with its published regulations," *Antonelli v. Fed. Bureau of Prisons*, 591 F. Supp. 2d 15, 26 (D.D.C. 2008) (citing 5 U.S.C. § 552(a)(3) and 552(a)(6)(A)(i)). The defendant has demonstrated that the Civil Division did not receive a proper FOIA request from the plaintiff, Def.'s Mem., Kovakas Decl. ¶ 5, and the plaintiff does not challenge this position, Pl.'s Opp'n at 10-11. The plaintiff's FTCA claim does not constitute a proper FOIA request because it neither demands the disclosure of agency records nor describes the records sought. 5 U.S.C. § 552(a)(3)(A) ("[E]ach agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any),

_____

[5]       Ordinarily, if a plaintiff receives a substantive response from the agency before he files a lawsuit, he must pursue his administrative remedies with respect to the response. 5 U.S.C. § 552(a)(6)(C); *Oglesby*, 920 F.2d at 61. Here, the *pro se* plaintiff is incarcerated, and he has certified that he served a copy of his complaint on the named defendants by mail on February 13, 2009. The Clerk of Court's date stamp reflects that the complaint was received on April 9, 2009, and it was officially filed on the Court's electronic docket on April 23, 2009. Although the plaintiff could  have received the DEA's February 4, 2009 letter with respect to Request No. 09-0187-P and might have appealed the response to the OIP before he mailed his complaint, it is unreasonable to expect such prompt delivery of mail to a prisoner. Moreover, the February 4, 2009 letter was a partial response to the plaintiff's FOIA request. It notified plaintiff, among other matters, that it had forwarded his request to program areas within the DEA but had not yet received responses from them, and the letter did not include a notice to the plaintiff of his right to appeal the denial of his request to the OIP. The Court therefore declines to punish the plaintiff for failing to exhaust his administrative remedies when the DEA had not yet advised him of his right to pursue an appeal to the OIP.

and procedures to be followed, shall make the records promptly available to any person.").

The plaintiff having failed to pursue administrative appeals of the DEA's responses to Request Nos. 95-0263-F, 96-0264-P, and 98-1218-F, and submit a proper FOIA request to the Civil Division, the Court must grant the defendant's motion for summary judgment in part on the ground that the plaintiff failed to exhaust his administrative remedies.

### C.  Searches for Records Responsive to the Plaintiff's FOIA Requests

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  To meet its burden, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of the agency's search.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  In the absence of conflicting evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA.  *Id.* at 127. However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper."  *Truitt*, 897 F.2d at 542.

### 1.  The DEA's Searches for Records Responsive to Request Nos. 04-0699-F and 09-0187-P

Both Request No. 04-0699-F and Request No. 09-0187-P were interpreted as requests in part for criminal investigative information about the plaintiff.  Def.'s Mem., Little Decl. ¶ 38. The declarant of the Little Declaration explains that such criminal investigative records "are reasonably likely to be contained in the DEA Investigative Reporting and Filing System, JUSTICE/DEA-008 (IFRS))."  *Id.* ¶ 39.  The DEA Narcotics and Dangerous Drugs Information

System ("NADDIS") "is the . . . practical means by which [the] DEA retrieves investigative reports and information from IFRS." *Id.* ¶ 44. "As an index, NADDIS points to investigative files and . . . other documents . . . [containing] information regarding a particular individual or subject of an investigation[] and other information such as releases made to individuals under the FOIA." *Id.* Information can be retrieved concerning an individual indexed in NADDIS by his name, Social Security number, or date of birth. *Id.*

A NADDIS query regarding Request No. 09-0187-P, using the plaintiff's name, Social Security number and date of birth as search terms, *id.* ¶ 45, revealed that no investigative information related to the plaintiff had been entered into the system since 1995, *id.* ¶ 46. The search results also indicated that the DEA had released information to the plaintiff on May 1, 1996 in response to Request No. 96-0264-P. *Id.* It was further determined that Request No. 06-0699-F was duplicative of Request No. 96-0264-P, and that no new investigative information had been entered into any case file maintained in IFRS concerning the plaintiff since May 1, 1996. *Id.* ¶ 47. The DEA represents that it "does not duplicate a prior release when no additional information [is] available in response to a subsequent request for the same information." *Id.*

Insofar as the plaintiff's requests also sought information regarding investigations of two DEA special agents, *id.* ¶ 38, the DEA declarant explains that "[i]information related to the conduct of any DEA employee . . . [is] reasonably likely to be maintained in the DEA Planning and Inspection Division records, JUSTICE/DEA-010." *Id.* ¶ 39. The DEA's Office of Professional Responsibility ("OPR"), a section of the Planning and Inspections Division, is the section responsible for conducting investigations into the conduct of DEA employees. *Id.* ¶ 41. Its files are maintained under the name of the individual subject of the investigation and a

sequentially-assigned investigative file number.  *Id.* ¶ 42.  These investigative files are retrieved "by querying the Office of Professional Responsibility Case Tracking System (OCTS) . . . using the subject individual's name or social security number, the complainant's name or the OPR case number."  *Id.* ¶ 43.

A query of OCTS yielded no records "regarding the receipt by DEA of a complaint from the plaintiff regarding any DEA agent's involvement in illegally intercepted telephone communications."  *Id.*, Little Decl. ¶ 48.  However, the search did yield 50 pages of records regarding the plaintiff's complaint "related to property [allegedly] stolen or illegally seized, illegal searches and the falsification of evidence."  *Id.*  The plaintiff contends that the components failed to conduct a reasonable search for the requested records, *see* Pl.'s Opp'n at 9-11, yet he fails to identify the defect or defects in the searches that were conducted.

## 2.  The EOUSA and the OPR Searches

The EOUSA's declarant states that staff forwarded the plaintiff's FOIA request to the FOIA Contact for the United States Attorney's Office for the Middle District of Florida, Def.'s Mem., Luczynski Decl. ¶ 7, who looked for records in a computer case tracking system under the name "Lewis."  *Id.* ¶ 8.  The OPR's FOIA Specialist "searched the OPR database and identified three files responsive to the Plaintiff's request."  Def.'s Mem., Reiersen Decl. ¶ 6.  On the current record of this case, the Court concludes that neither the EOUSA nor the OPR has demonstrated that its staff conducted a search reasonably calculated to discover records responsive to the plaintiff's FOIA requests.

"While the affidavits or declarations submitted by the agency need not set forth with meticulous documentation the details of an epic search for the requested records, they must

describe what records were searched, by whom, and through what processes, and must show that the search was reasonably calculated to uncover all relevant documents." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 92 (D.D.C. 2009) (citations and internal quotation marks omitted). The declarations submitted by the EOUSA and the OPR do not establish that the systems of records actually searched were those most likely to contain records responsive to the plaintiff's FOIA requests. *See Oglesby*, 920 F.2d at 68 (stating that "the agency cannot limit its search to only one record system if there are others that are likely to turn up the information requested"). Nor do the declarations "describe[] with particularity the files that were searched [or] the manner in which they were searched." *Steinberg*, 23 F.3d at 552.

The Court therefore grants the defendant's motion for summary judgment in part because the DEA has demonstrated that its searches for records responsive to Request Nos. 04-0699-F and 09-0187-P were reasonable under the circumstances, and denies the motion in part on the ground that the defendant has not demonstrated compliance with the FOIA by conducting searches reasonably calculated to locate EOUSA and OPR records responsive to the plaintiff's FOIA requests.

### D. Exemptions Claimed by the DEA

#### 1. Exemption 2

Exemption 2 shields from disclosure information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Review of the *Vaughn* Index shows that the DEA relies on Exemption 2 to withhold codes assigned to confidential informants, Def.'s Mem., Little Decl., Ex. K (Page Itemization for page numbers 10-49), yet the declaration does not refer to Exemption 2 or otherwise explain the agency's decision to withhold information

under Exemption 2. It is unclear whether the DEA relies solely on Exemption 2 to withhold confidential informant codes, or whether Exemption 7(D) may also be a basis for non-disclosure. *See id.* Little Decl. ¶ 75 (discussing the withholding of "source-identifying and source-supplied investigative information," including informant identifier codes, under Exemption 7(D)). The Court will defer its consideration of Exemptions 2 and 7(D), so that the defendant is accorded an opportunity to clarify this matter in a renewed summary judgment motion.[6]

### 2. Exemption 3

Exemption 3 protects from disclosure records that are "specifically exempted from disclosure by statute" provided that such statute either requires a withholding (A) "in such a manner as to leave no discretion on the issue," or (B) "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The 59 pages of records referred by the EOUSA to the DEA "comprise a d[r]aft of an Affidavit in Support of Application for a court ordered Title III intercept of wire communications of the plaintiff and several third-parties." Def.'s Mem., Little Decl. ¶ 63. The DEA has withheld portions of the draft affidavit on the ground that the draft "contain[s] information specifically exempted by statute," that is, 18 U.S.C. § 2517, which "prohibits the disclosure of information obtained from the use of a wire intercept." Def.'s Mem., Little Decl. ¶ 63.

---

[6] The Court also defers ruling on the applicability of Exemptions 7(C) and 7(F). The DEA does not rely on Exemption 7(C) alone as the basis for withholding responsive documents; in each instance it has withheld information in conjunction with either Exemption 7(D) or Exemption 7(F). There also are instances where the DEA withheld information under Exemption 7(D) in conjunction with Exemption 7(F). If information is properly withheld under any one of these exemptions, there will be no need to consider the applicability of another exemption with respect to that same information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994). The defendant therefore will be afforded an opportunity to further explain its positions regarding these Exemptions.

It is true that information pertaining to wiretaps may be withheld under Exemption 3. *See, e.g., Wolfson v. United States*, 672 F. Supp. 2d 20, 28 (D.D.C. 2009); *Peay v. Dep't of Justice*, No. 04-1859, 2007 WL 788871, at *4 (D.D.C. Mar. 14, 2007); *Queen v. Gonzales*, No. 96-1387, 2005 WL 3204160, at *5 (D.D.C. Nov. 15, 2005). The DEA's declaration is incomplete, however, as it neither explains that the agency had no discretion on the decision to withhold this information nor sets forth the particular criteria applied in reaching its decision to withhold certain information in the draft affidavit. Its reference to Title III alone, without any explanation in the declaration, does not suffice. The Court therefore denies the defendant's motion for summary judgment in part because it has failed to justify its decision to withhold information under Exemption 3.

### 3. Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Information that applies to a particular individual meets the threshold requirement for Exemption 6 protection. *See United States Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982). Furthermore, the exemption requires "a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act 'to open agency action to the light of public scrutiny.'" *Dep't of the Air Force v. Rose*, 425 U.S. 352, 372 (1976); *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989). The privacy interest at stake belongs to the individual, not the agency. *Reporters Comm.*, 489 U.S. at 763-65; *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989) (noting individual's significant privacy interest "in avoiding

the unlimited disclosure of his or her name and address"). It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin.v. Favish*, 541 U.S. 157, 172 (2004).

Under Exemption 6, the DEA has withheld the names of DEA personnel from the second page of a two-page letter from the OPR to the plaintiff dated September 1, 1995. Def.'s Mem., Little Decl. ¶ 56. Although the DEA relies both on Exemptions 6 and 7(C) with regard to the information it has withheld, *see id.*, it is unclear whether this letter was compiled for law enforcement purposes, and therefore the Court considers only whether the agency properly withheld these names under Exemption 6. The DEA certainly meets its threshold obligation under Exemption 6, as the information at issue applies to particular individuals. Its declarant also explains that the DEA identified no public interest, that is, "information that would shed light on the DEA's performance of its mission," from disclosure of the identities of its employees sufficient to outweigh these individuals' personal privacy interests. *Id.* ¶ 64.

The plaintiff deems the declarant's statements "conclusory and generalized," Pl.'s Opp'n at 17, and asserts that government misconduct justifies the release of all the records he requests, *id.* at 12. Specifically, the plaintiff contends that "his telephone communications were intercepted without authorization from the United States Attorney General" in violation of federal law, *id.*, and he accuses the DEA and two Special Agents of "fraudulent concealment," *see id.* at 17, due to their failure to disclose the requested records in response to his FOIA request. In his view, "[t]he DEA has engaged in illegal activity, and the documents sought is [sic] more than necessary in order to confirm that evidence." *Id.*

19

It appears that the plaintiff's interest in obtaining the requested records under the FOIA relates to his criminal conviction. He posits that he has "provide[d] the court with evidence in support of his claims that crimes, fraud and fraudulent concealment has [sic] been used to convict him, where his telephone communications were illegally and unlawfully intercepted, used, and disclosed throughout his trial, all without the United States Attorney General authorizing interception, use, and disclosure." *Id.* at 5. However, any personal interest the plaintiff may have in the identities of the DEA Special Agents referenced in the letter from OPR does not qualify as a public interest favoring disclosure, and "it is well established that an individual's personal interest in challenging his criminal conviction is not a public interest under FOIA because it 'reveals little or nothing about an agency's own conduct.'" *Willis v. U.S. Dep't of Justice*, 581 F. Supp. 2d 57, 76 (D.D.C. 2008) (quoting *Reporters Comm.*, 489 U.S. at 773). Moreover, the so-called evidence on which he relies to establish agency misconduct hardly leads a reasonable person to conclude that the DEA and its agents acted improperly. *Cf. Favish*, 541 U.S. at 174 ("We hold that, where . . . the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred."). This purported evidence appears to consist of records that have not been released in response to the plaintiff's FOIA requests, *see* Pl.'s Opp'n at 12-14, 16-18; *see id.* Ex. B-C, E; *see generally* Pl.'s Decl, which reduces it to nothing more than pure speculation. Thus, absent a compelling public interest of such magnitude that it outweighs these individuals' privacy interests, the Court concludes that the DEA properly withheld the agents'

names under Exemption 6.  *See U.S. Dep't of Defense v. Fed. Labor Relations Auth*. 510 U.S.

487, 502 (1994) (finding that "the privacy interest of bargaining unit employees in nondisclosure

of their home addresses substantially out-weighs the negligible FOIA-related public interest in

disclosure" of their addresses to union representative).

4.  Law Enforcement Records Under Exemption 7

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  In

order to withhold materials properly under Exemption 7, an agency must establish that the

records at issue were compiled for law enforcement purposes, and that the material satisfies the

requirements of one of the subparts of Exemption 7.  *See Pratt v. Webster*,  673 F.2d 408, 413

(D.C. Cir. 1982).  In assessing whether records are compiled for law enforcement purposes, the

"focus is on how and under what circumstances the requested files were compiled, and whether

the files sought relate to anything that can fairly be characterized as an enforcement proceeding."

*Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal

quotations omitted).

The DEA declarant explains that the Comprehensive Drug Abuse Prevention and Control

Act of 1970, Pub. L. No. 91-513, 84 Stat. 1236 (codified as amended in sections of Title 21 of the

U.S. Code), authorizes the DEA to investigate "incidences involving the trafficking in controlled

substances, dangerous drugs and precursor chemicals and the violators who operate at interstate

and international levels," and to "seize and forfeit assets derived from, traceable to, or intended to

be used for illicit drug trafficking," among other functions.  Def.'s Mem., Little Decl. ¶ 65.  "The

records deemed responsive to the plaintiff's FOIA requests are criminal investigative records . . . compiled during criminal law enforcement investigations of the plaintiff and several third-parties." *Id.* ¶ 66. The plaintiff raises no objection to this assertion, and the Court concludes that the 59 pages of records referred by the EOUSA to the DEA were compiled for law enforcement purposes within the scope of Exemption 7.

### 5. The DEA's Glomar Response

If an individual is the target of a FOIA request, the agency to which the FOIA request is submitted may provide a "Glomar" response, that is, the agency may refuse to confirm or deny the existence of records or information responsive to the FOIA request on the ground that even acknowledging the existence of responsive records constitutes an unwarranted invasion of the targeted individual's personal privacy. *Phillippi v. Cent. Intelligence Agency*, 546 F.2d 1009, 1014-15 (D.C. Cir. 1976) (CIA refused to confirm or deny existence of secret vessel, the "Glomar Explorer"); *see Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995); *Enzinna v. U.S. Dep't of Justice*, No. 97-5078, 1997 WL 404327, *2 (D.C. Cir. June 30, 1997) (affirming the agency's refusal to confirm or deny the existence of responsive records because acknowledging the existence of such records would associate a witnesses with a criminal investigation).

Relying on Exemptions 6 and 7(C), the DEA neither confirmed nor denied the existence of investigative records pertaining to Special Agents Tom Feeney or Dale VanDorple. Def.'s Mem., Little Decl. ¶ 52. Based on the plaintiff's assertions as to these agents' misconduct, "the alleged offenses [committed by them] are violations of criminal laws, and DOJ and DEA directives." *Id.* ¶ 57. If any such responsive records exist, they would be "collected pursuant to

[the] DEA's law enforcement responsibility [under the] Drug Abuse Prevention and Control Act of 1970, . . . and [its] responsibility for the actions of its employees," and "would be placed into DEA investigative case files that are maintained in the Planning and Inspection Records." *Id.*

The plaintiff contends that the DEA "was under a duty and obligation to provide [him] the documents relevant to the interview, investigation, findings, and results from the internal affairs complaint filed" with respect to Special Agents Feeney and VanDorple, and, without support, he argues that redacted records could be released. Pl.'s Opp'n at 17. He does not, however, argue the existence of a public interest in disclosure.

"[S]omething, even a modest privacy interest, outweighs nothing every time." *Horner*, 879 F.2d at 879. Individuals' privacy interests are substantial given the nature of law enforcement records. *See SafeCard Servs.*, 926 F.2d at 1205; *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981). And "[t]he District of Columbia Circuit has identified 'a [] general interest in protecting the privacy of [one's] employment records against public disclosure . . . [and] at least a minimal interest in not having it known whether those records contain or do not contain [disciplinary action].'" *Smith v. FBI*, 663 F. Supp. 2d 1, 5 (D.D.C. 2009) (alterations in original) (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990)). If the DEA were to confirm the existence of investigative records pertaining to Special Agents Feeney and VanDorple, the DEA necessarily reveals the information its Glomar response is intended to shield. Accordingly, the Court concludes that the DEA's Glomar response was appropriate. *See, e.g., Smith*, 663 F. Supp. 2d at 5 (affirming Glomar response with respect to a request for disciplinary reports regarding an FBI agent); *Roth v. U.S. Dep't of Justice*, 656 F. Supp. 2d 153, 166-67 (D.D.C. 2009) (affirming FBI's refusal to search for records pertaining to

three individuals absent privacy waivers or proof of death because agency confirmation that it maintains records about them "would thus associate them with criminal activity").

## III. CONCLUSION

The plaintiff has failed to exhaust his administrative remedies with respect to his three FOIA requests submitted to the DEA and that he failed to submit a proper FOIA request to the Civil Division. The DEA has demonstrated that its search for records responsive to DEA FOIA Request Nos. 04-0699-F and 09-0187-P were reasonable under the circumstances, and that its decision to withhold certain information under FOIA Exemptions 6 and 7(C), and that its Glomar response were appropriate. For these reasons, the Court will grant in part the DOJ's motion for summary judgment. However, because the EOUSA and the OPR have not demonstrated that their searches for records responsive to the plaintiff's FOIA requests were reasonable under the circumstances, and because the DEA has not demonstrated that it properly has withheld certain information under Exemption 3, the DOJ's motion will be denied in part. The Court defers issuing a ruling on the defendant's decisions to withhold information under Exemptions 2, 7(C), 7(D), 7(E), and 7(F). As to these matters on which summary judgment is denied, the defendant may file a renewed motion for summary judgment based on additional undisputed facts or by presenting additional legal arguments. An Order accompanies this Memorandum Opinion.


_____/s/_____
REGGIE B. WALTON
United States District Judge

DATE:  August 17, 2010