# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                               )

ANTHONY LEWIS,               )
                               )

         Plaintiff,       )
                               )

         v.              )         Civil Action No. 09-0746 (RBW)
                               )

UNITED STATES DEPARTMENT OF JUSTICE,  )
                               )

         Defendant.     )
_____ )

## <u>MEMORANDUM OPINION</u>

The plaintiff brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2010), for the release of information maintained by components of the United States Department of Justice ("DOJ"). The Court granted in part and denied in part without prejudice the DOJ's first motion for summary judgment, *see generally Lewis v. U.S. Dep't of Justice,* 733 F. Supp. 2d 97 (D.D.C. 2010), and this matter is now before the Court on the plaintiff's motion for relief from judgment and for in camera review [Dkt. # 65] and the defendant's renewed motion for summary judgment [Dkt. # 58]. For the following reasons, the plaintiff's motion is denied, and the defendant's motion is granted in part and denied in part.

## I. BACKGROUND

### A. Request to the Executive Office for United States Attorneys

The plaintiff requested the following information be provided to him by the United States

Attorney's Office for the Middle District of Florida ("USAO-FLM"):

> [A]n expedicted [sic] copy of "all" compliants [sic], affidavits, and
> other documents filed with the United States Attorney Janet Reno in
> 1993-1994 and the Office of Enforcement Operations, seeking
> authorization to intercept the telephone communications of Anthony
> Lewis . . . which were filed by the Prosecuting Assistant U.S.
> Attorney . . . [and] a copy of the authorization from Janet Reno,
> giv[ing] the prosecuting attorney authority to obtain Judicial order to
> intercept telephone communications . . . and the judicial orders from
> the judge issued to the prosecuting attorney.

Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss in Part,

and Alternatively, for Summary Judgment ("Def.'s Mem.") [Dkt. # 23], Declaration of David

Luczynski ("Luczynski Decl."), Exhibit ("Ex.") A (Privacy Act Identification and Request Form

dated September 21, 2008) at 2.  The USAO-FLM referred the matter to a central office, the

DOJ's Executive Office for United States Attorneys ("EOUSA"), for processing.  *See id.*,

Luczynski Decl. ¶ 4.  In response to the request, which was assigned FOIA No. 08-3328, *id.*,

Luczynski Decl. ¶ 5, the EOUSA released 35 pages of records in full, released 6 pages in part

after having redacted certain information under FOIA Exemption 7(C), and referred 59 pages to

the Drug Enforcement Administration ("DEA") for its direct response to the plaintiff.  *Id.*,

Luczynski Decl. ¶ 6.

### B. Request to the Office of Professional Responsibility

The records the plaintiff sought from the DOJ's Office of Professional Responsibility

("OPR") pertained to a complaint he filed against Jack Fernandez, the Assistant United States

Attorney ("AUSA") who prosecuted the plaintiff's criminal case.  *See* Def.'s Mem., *Vaughn*

Declaration of Patricia Reiersen ("Reiersen Decl.") ¶ 5.  In relevant part, the request read:

> 1).  I am requesting a complete copy of the file in reference [to] the complaint I filed against [AUSA] Jack Fernandez, Middle District of Florida, Tampa Division, which was filed in the year 1995, 1996, or 1997.
> 2). I want included in the file the complaint against Jack Fernandez, Jack Fernandez's response to the complaint, investigative documents from the investigation, any and all documents from individuals interviewed or contacted in reference to the complaint, and the documents  of the findings of the complaint, including the sanctions imposed as well as the outcome of the complaint and investigation.
> 3). I am requesting any and all related documents from cases or investitations [sic] associated with the complaint and investigation in reference to Jack Fernandez.

*Id.*, Reiersen Decl., Ex.  A (FOIA request dated June 17, 2004) at 2.  The OPR's search for

responsive records yielded three files containing a total of 54 pages of records, 18 of which were

released in full, 27 of which were released in part after having redacted information under FOIA

Exemptions 2, 5, 6, and 7(C).  *Id.*, Reiersen Decl., Ex. B (Letter from Marlene M. Wahowiak,

Assistant Counsel for Freedom of Information and Privacy Acts, OPR, to plaintiff dated

November 1, 2004) at 1.  Five pages were duplicates and were not processed.[1]  *Id.*, Reiersen

Decl. ¶ 6.

---

[1]     The OPR referred four pages of records "to [the] EOUSA for processing and direct response to the Plaintiff."  Def.'s Mem., Reiersen Decl. ¶ 6.  Notwithstanding the referral, the defendant must account for the disposition of these records, *see Williams v. FBI*, No. 92-5175, 1993 WL 157679, at *1 (D.C. Cir. May 7, 1993) (per curiam) (remanding case to district court "so that the FBI may present an updated justification for withholding Document G," which it had referred to the DEA for direct response to the requester); *see also Cozen O'Connor v. U.S. Dep't of Treasury*, 570 F. Supp. 2d 749, 769 (E.D. Pa. 2008) ("When the agency refers the record to the originating agency for a response, it still must defend the originating agency's decision to withhold the record."), which it has not done.  For this reason, the defendant's motion for summary judgment will be denied in part.

### C.  Requests and Referral to the Drug Enforcement Administration[2]

#### 1.  Request No. 04-0699-F

The plaintiff sent a request to the DEA's Internal Affairs Office for the following information:

> 1). Any and all notes, investigative information, resources for information, end results of investation [sic] and compliant [sic] in reference to Agents Tom Feeney and Dale VanDorple, from complaint filed by Anthony Lewis in reference to the agents['] involvement with illegally intercepted telephone communications [sic].
> 2). Any and all notes, investigative information, resources for information, end results of investigation and complaint in reference to Agents Tom Feeney and Dale VanDorple, from any and all other past complaints and investigations of Agents Feeney and VanDorple.

Def.'s Mem., Declaration of William C. Little, Jr. ("Little Decl."), Ex. A (FOIA request dated January 15, 2004) at 2.[3]  On September 11, 2009, the DEA released 49 pages of records in full and released one page in part, *id.*, Little Decl. ¶ 27, after redacting the names of DEA personnel under FOIA Exemptions 6 and 7(C).  *Id.*, Little Decl. ¶ 28.  It neither confirmed nor denied that information pertaining to Agents Feeney and VanDorple existed.  *Id.*, Little Decl. ¶ 28.

---

[2]     The Court previously ruled that the plaintiff failed to exhaust his available administrative remedies with respect to three of his FOIA requests submitted to the DEA (Request Nos. 95-0263-F, 96-0264-P, and 98-1218-F), but not the remaining three requests (Request Nos. 04-0699-F, 09-0187-P, and 09-0285-P).  *See Lewis*, 733 F. Supp. 2d at 106.

[3]     The DEA's declarant explains that the agency has no Internal Affairs Office. Def.'s Mem., Little Decl. ¶ 39 n.7.  Because "investigations related to the conduct of DEA employees are conducted by the DEA Office of Professional Responsibility," the search included a query of the Office of Professional Responsibility Case Tracking System.  *Id.*, Little Decl. ¶ 43.

2.  Request No. 09-0187-P

Request No. 09-0187-P also pertained to information in DEA records about the plaintiff's

complaint to the DEA's Office of Internal Affairs against Agents Tom Feeney and Dale

VanDorple.  The plaintiff sought:

> 1) any and all documents relevant to Anthony Lewis and the Internal
> Affairs complaint filed against Agents Tom Feeney and Dale
> VanDorple in 2004.  (Investigated by Pat Stancamp).
> 2)  any and all documents relevant to the investigation of Tom
> Feeney and Dale VanDorple as a result of the Internal Affairs
> complaint filed by Anthony Lewis.
> 3) any and all documents relevant to the findings of the Internal
> Affairs complaint filed against Tom Feeney and Dale VanDorple,
> after complaint filed by Anthony Lewis.
> 4)  any and all documents relevant to the Internal Affairs
> investigation of Tom Feeney and Dale VanDorple, complaint made by
> Anthony Lewis, relevant and not requested above.

Def.'s Mem., Little Decl., Ex. E (FOIA Request dated October 29, 2008) at 2.  Relying on FOIA

Exemptions 6 and 7(C), the DEA neither confirmed nor denied the existence of responsive

records pertaining to Feeney and VanDorple, and consequently, its staff neither conducted a

search for nor released records pertaining to the agents.  *Id.*, Little Decl. ¶ 32.  This Court

already has determined that this response was appropriate.  *See Lewis*, 733 F. Supp. 2d at 112-

13.

3.  Request No. 09-0285-P

The EOUSA forwarded to the DEA 59 pages of records "consist[ing] of an unsigned

document titled *Affidavit in Support of Application* prepared by a DEA special agent," Def.'s

Mem., Little Decl. ¶ 34 (footnote omitted), and the DEA assigned the matter Request No. 09-

0285-P.  *Id.*, Little Decl. ¶ 35.  The unsigned document "was believed to be a draft of an affidavit

. . . submitted in support of an application for a Title III Wire Intercept."  Memorandum of Points

and Authorities in Support of Defendant's Renewed Motion for Summary Judgment ("Def.'s

Renewed Mem."), First Supplemental Declaration of William C. Little, Jr. ("Supp. Little Decl.")

¶ 2.  Initially the DEA withheld the document in full under FOIA Exemption 3 on the ground

that disclosure of information obtained from the use of a wire intercept is prohibited under

federal law.  *See* Def.'s Mem., Little Decl. ¶ 63.  The agency subsequently has abandoned this

position, Def.'s Renewed Mem., Supp. Little Decl. ¶ 3, and has released five pages of the

document in full, released 36 pages in part, and withheld 18 pages in full under FOIA

Exemptions 7(C), 7(D), and 7(F).  *Id.*, Supp. Little Decl. ¶ 4.

## II.  DISCUSSION

### A.  *Summary Judgment in a FOIA Case*

The Court will grant a motion for summary judgment "if the movant shows that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(a).  The moving party bears the burden of demonstrating the absence of

a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and may do

so by "citing to particular parts of materials in the record, including . . . affidavits or declarations

. . . ."  FED. R. CIV. P. 56(c)(1)(A).  "[A] material fact is 'genuine' . . . if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party" on an element of the claim.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 317, 248 (1986).  Factual assertions in the moving

party's affidavits or declarations may be accepted as true unless the opposing party submits his

own affidavits or declarations or documentary evidence to the contrary.  *Neal v. Kelly*, 963 F.2d

453, 456 (D.C. Cir. 1992).  In opposing a summary judgment motion, a party may not "replace

conclusory allegations of the complaint . . . with conclusory allegations of an affidavit," *Lujan v.*

*Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990), but rather must "set forth specific facts showing that there is a genuine issue for trial," *Liberty Lobby*, 477 U.S. at 248 (internal quotation marks omitted).

In a FOIA case, the Court may grant summary judgment based on information provided in an agency's affidavits or declarations when they "describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record []or by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). "[A] plaintiff pursuing an action under FOIA must establish that either: (1) the *Vaughn* index does not establish that the documents were properly withheld; (2) the agency has improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate and disclose all nonexempt material in the requested documents." *Schoenman v. FBI*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) (citations omitted).

### B.  Searches for Records Responsive to the Plaintiff's FOIA Requests[4]

The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  To satisfy its burden to show that no genuine issue of material fact exists, the defendant must show that each agency component "has conducted a search reasonably calculated to uncover all relevant documents," *Elliot v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)), and it may base its showing on affidavits or declarations submitted in good faith, *see Truitt*, 897 F.2d at 84, as long as these affidavits or declarations explain in reasonable detail the scope and method of the search, *see Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (citing *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).  "In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA." *North v. U.S. Dep't of Justice*, 774 F. Supp. 2d 217, 222 (D.D.C. 2011) (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).  There is no requirement that an agency search every record system in response to a FOIA request; it may limit its search to only those locations where responsive documents likely are maintained. *Porter v. CIA*, No. 10-050, 2011 WL 1497648 at *8 (D.D.C. Apr. 21, 2011). However, if the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Beltranena v. Clinton*, 770 F. Supp. 2d 175, 183 (D.D.C. 2011) (quoting *Truitt*, 897 F.2d at 542); *see also Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d

---

[4]       The Court previously ruled that the DEA's searches responsive to DEA FOIA Request Nos. 04-0699-F and 09-0187-P were reasonable under the circumstances. *See Lewis*, 733 F. Supp. 2d at 109.  No search for records responsive to DEA FOIA Request No. 09-0285-P was required because these materials were referred from the EOUSA to the DEA.

321, 326 (D.C. Cir. 1999) (stating that summary judgment is inappropriate "if a review of the record raises substantial doubt" about the adequacy of the search) (citation omitted).

### 1.   The EOUSA's Search for Responsive Records

The "EOUSA does not have a uniform way of searching for records but rather leaves it in the hands of the individuals working in the particular office to come up with their own way of record keeping." Def.'s Renewed Mem., Supp. Luczynski Decl. ¶ 4.  Where, as here, the "records sought were specifically mentioned in the request," a person "familiar with the system of record keeping in that office" affords "practically pin-point accura[cy]" to the search.  *Id.*, Supp. Luczynski Decl. ¶ 5.

"Each United States Attorney's Office maintains the case files for criminal matters prosecuted by that office," and the "EOUSA undertook the search for documents . . . by forwarding the request to the FOIA Contact for the [USAO-FLM]."  Defs.' Mem., Luczynski Decl. ¶ 7.  The USAO-FLM FOIA Contact typically "read[s] through [a] request . . . [to] ascertain whether or not [the office has] a case on the subject by searching through [the] case management database (LIONS)," described as "a comprehesive database of all cases in [the USAO-FLM, which] will include any cases involved in the request."  Defs.' Renewed Mem., Declaration of Deborah A. McLane ("McLane Decl.") ¶ 3.  If a LIONS search reveals that the USAO-FLM has records pertaining to the subject of a FOIA request, the FOIA Contact "asks [the] docketing section to retrieve the file(s)," *id.*, McLane Decl. ¶ 4, which she reviews manually in search of the requested records, *id.*, McLane Decl. ¶ 5.

In this case, the FOIA Contact states that she supervised the search for and retrieval of records responsive to the plaintiff's FOIA request by a work study student at the USAO-FLM.

Def.'s Renewed Mem., McLane Decl. ¶ 7.  Although she had "no recollection as to the specific

steps" taken more than two years prior to her declaration with respect to the search, she explains

that she "went through the documents that the student [retrieved], compared them to what [the

plaintiff] was asking for, and made the determination that what [the plaintiff] asked for was what

the student copied."  *Id.*, Def.'s Renewed Mem., McLane Decl. (introductory paragraph).  The

EOUSA represents that "[a]ll documents responsive to [p]laintiff's FOIA request [were] located

in the [USAO-FLM's] . . . Criminal Case File System (Justice/USA-007) entitled *United States*

*v. Anthony Lewis*."  Def.'s Mem., Luczynski Decl. ¶ 9.  Further, its declarant states that "[t]here

are no other records systems or locations within the [USAO-FLM] in which other files pertaining

to [p]laintiff's criminal case[] were maintained."  *Id.*, Luczynski Decl. ¶ 10.

The plaintiff challenges the EOUSA's search on three grounds.  He contends that the

declarants "did not state what file specifically was obtained," and that the declarants "failed to

state where they searched for records [he] requested."  Plaintiff's Opposition to the Defendant's

Renewed Motion for Summary Judgment, and Request for Relief from the Judgment Dismissing

Other Defendants and Granting Defendant[] Summary Judgment in Part in Light of Clear Error

and New Evidence, With Request for In Camera Review ("Pl.'s Opp'n") [Dkt. #64] at 7.  These

arguments are easily dispatched by reference to the very declarations the plaintiff challenges.  In

his request, the plaintiff identifies himself, identifies his criminal case by number and by court,

and names the AUSA who prosecuted the case.  *See* Def.'s Mem., Luczynski Decl., Ex. A at 1-2.

The EOUSA's supporting declarations demonstrate that the USAO-FLM FOIA Contact searched

the LIONS database, and that the responsive records were found in a criminal case file under the

plaintiff's name.  The declarations are detailed enough for both the plaintiff and the Court to

determine that the search was reasonably calculated to locate records responsive to the request.

The plaintiff's third argument arises from his discovery of the existence of a sealed case

in the United States District Court for the Middle District of Florida.  *See* Pl.'s Opp'n at 9-11;

*see also id.*, Ex. A (Declaration of Anthony Lewis) ¶¶ 2-4.  He represents that documents filed in

this sealed case include "documents from . . . the United States Attorney['] s Office . . . and the

DEA, all relevant to the Interception of the plaintiff's telephone communications."  Pl.'s Opp'n

at 9.  He notes that neither EOUSA declarant mentions documents contained in the sealed case,

and the declarations to not claim that these court "documents . . . are exempt from disclosure."

*Id.* at 10.  He contends that "[t]he complaints and affidavits presented to the district court, . . .

which exist in the sealed case, are relevant to the plaintiff's FOIA request," *id.*, and therefore,

"the EOUSA has not made a sufficient, adequate and reasonable search for the records and/or

documents [he] requested" because the search results do not include court documents from the

sealed case, *id.* at 9.  The plaintiff misunderstands an agency's obligations under the FOIA.

The FOIA requires that agency records be made available to a person who reasonably

describes them and submits his request in compliance with published rules.  *See* 5 U.S.C. §

552(a)(3)(A).  The term "agency record" means records that the agency creates or obtains, and

records under its control at the time it receives a FOIA request.  *U.S. Dep't of Justice v. Tax*

*Analysts,* 492 U.S. 136, 144 (1989); *see Kissinger v. Reporters Comm. for Freedom of*

*Press,* 445 U.S. 136, 151-52 (1980) ("FOIA is only directed at requiring agencies to disclose

those 'agency records' for which they have chosen to retain possession or control.").  Neither the

EOUSA nor the USAO-FLM "controls" documents filed in and maintained by the United States

District Court for the Middle District of Florida, and nothing in their declarations suggests that either the EOUSA or the USAO-FLM maintained or obtained copies of documents filed in federal court.  And the EOUSA is under no obligation to locate or retrieve files from another federal government agency, *see Moore v. Aspin*, 916 F. Supp. 32, 36 (D.D.C. 1996) (stating that an agency "is not required to respond to an FOIA request directed at other agencies"); *see also Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 162 (1975) (finding that the FOIA "only requires disclosure of certain documents which the law requires the agency to prepare or which the agency has decided for its own reasons to create"), and need not have retrieved documents which may have been filed in the sealed case.  The possible existence of documents of interest to the plaintiff in sealed court records is irrelevant to the legal issue here, that is, the adequacy of the search undertaken by the USAO-FLM for records reponsive to the plaintiff's FOIA request.[5]

The EOUSA's supporting declarations demonstrate that the search for records responsive to the plaintiff's FOIA request was reasonable under the circumstances.

## 2.  The OPR's Search for Responsive Records

The OPR "is responsible for investigating allegations of misconduct involving DOJ attorneys, investigators, or law enforcement personnel, where the allegations relate to the exercise of the authority of an attorney to investigate, litigate, or provide legal advice."  Def.'s

---

[5]        Furthermore, neither the federal courts nor state courts are subject to the FOIA. 5 U.S.C. § 551(1)(B) (2010) (excluding federal courts from definition of "agency"); *see United States v. Casas*, 376 F.3d 20, 22 (1st Cir. 2004) ("The judicial branch is exempt from the [FOIA]"); *Dockery v. Gonzales*, 524 F. Supp. 2d 49, 52 n.1 (D.D.C. 2007) ("Plaintiff also appears now to seek records from this Court and the D.C. Superior Court . . . [b]ut the FOIA does not apply to courts or state and local governments.").

Renewed Mem., Second Declaration of Patricia Reiersen ("2d Reiersen Decl.") ¶ 3.  Its declarant

explains that complaints are "routinely entered into the BRS database," *id.*, 2d Reiersen Decl. ¶

9, which is the OPR's "one electronic database for tracking all OPR Program matters," *id.*, 2d

Reiersen Decl. ¶ 6.  "[C]asetrack matters [are] full investigations handled by OPR attorneys;

inquiry matters [are] matters handled by OPR attorneys[] which may be elevated to

investigations; and correspondence matters [are] matters that would not rise to the level of an

inquiry and [are] routinely handled by OPR analysts."  *Id.*, 2d Reiersen Decl. ¶ 6.  "Information

such as complainant and subject names, . . . disposition, and other significant information [is]

entered into the BRS database by OPR analysts."  *Id.*, 2d Reiersen Decl. ¶ 6.  A search of the

BRS database generally is made "by entering the complainant and subject name if both [are]

available."  *Id.*, 2d Reiersen Decl. ¶ 7.

The OPR received the plaintiff's FOIA request on June 28, 2004, and OPR FOIA

Specialist Dale Hall conducted the initial search for responsive records.  Def.'s Mem., Reiersen

Decl. ¶¶ 5-6; Def.'s Renewed Mem., 2d Reiersen Decl. ¶ 2.  Following his search, Mr. Hall

retired.  Def.'s Renewed Mem., 2d Reiersen Decl. ¶ 2.  His successor, FOIA Specialist Patricia

Reiersen, has reviewed the OPR's records and recreated the search Mr. Hall conducted.  *Id.*, 2d

Reiersen Decl. ¶ 12.  Her search yielded "the same three responsive records that Mr. Hall found

in 2004, matters numbered 04441, 09144, and 12373."  *Id.*, 2d Reiersen Decl. ¶ 12.

The plaintiff sought in his FOIA request to the OPR records pertaining to both his

criminal case and his complaint against AUSA Fernandez.[6]  Def.'s Renewed Mem., 2d Reiersen

---

[6]      The declarant explains that the OPR "does not routinely maintain files pertaining
to criminal cases in matters where it does not conduct an investigation."  Defs.' Renewed Mem.,
(continued...)

Decl. ¶ 8.  Both the complainant and subject name were known, and typical search terms would be "Anthony near Lewis" and "Jack near Fernandez."  *Id.,* 2d Reiersen Decl. ¶ 8.  A BRS search using these terms yielded "three correspondence files."  *Id.,* 2d Reiersen Decl. ¶ 10.  Two of these files were located in the OPR's on-site file room and one was retrieved from OPR's storage facility at the Washington National Records Center.  *Id.*, 2d Reiersen Decl. ¶ 10.

The plaintiff challenges the OPR's searches, arguing that the declarations "still do not establish that the systems of records actually searched were those most likely to contain records responsive to the plaintiff's FOIA request," and fail to "describe with particularity the files that were searched or the manner in which they were searched."  Pl.'s Opp'n at 13; *see id.* at 8.  This is not so.  The supporting declarations establish that OPR staff searched the office's sole electronic database by which OPR tracks its cases, that the search yielded three correspondence files, and that the OPR does not maintain criminal files unless an investigation of a complaint is undertaken (and no such investigation of the plaintiff's complaint was conducted).

The plaintiff next claims to have "recently obtained credible information that Jack Fernandez was forced into resignation by the OPR and/or United States Attorney[']s Office as a result of the plaintiff's complaint, in 1998 and/or 1999."  Pl.'s Opp'n at 13; *see id.*, Ex. A (Declaration of Anthony Lewis) ¶¶ 7-9.  The plaintiff extrapolates from this alleged information, the source of which is not identified, an assumption not only that records relevant to the complaint he filed against AUSA Fernandez exist, but also that "the OPR has not made a

---

[6](...continued)
2d Reiersen Decl. ¶ 11.  Therefore, where, as here, the OPR did not investigate the plaintiff's complaint, its staff did not search the BRS database for criminal case files.  *Id.,* 2d Reiersen Decl. ¶ 11.

reasonable search for the[m]."  Pl.'s Opp'n at 15.  He asserts that the declarant "erroneously

states . . . that the OPR did not conduct an investigation of the plaintiff's complaint," such that

the declarant either "states [an] untruth . . . or the OPR has acted in bad faith."  *Id.* at 12.  The

plaintiff, however, offers no support for these assertions.

The OPR's searches certainly have yielded records responsive to the plaintiff's FOIA

request in correspondence files, and correspondence files are designed to house records in

matters which do not rise to the level of an inquiry.  Whether the records refer to AUSA

Fernandez's resignation is of no moment, and the plaintiff's dissatisfaction with the results of the

searches does not render the searches inadequate.  *See SafeCard Servs.,* 926 F.2d at 1201

("When a plaintiff questions the adequacy of the search an agency made in order to satisfy its

FOIA request, the factual question it raises is whether the search was reasonably calculated to

discover the requested documents, not whether it actually uncovered every document extant.");

*Iturralde v. Comptroller of the Currency*, 315 F. 3d 311, 315 (D.C. Cir. 2003) ("[I]t is long

settled that the failure of an agency to turn up one specific document does not alone render a

search inadequate.").  The OPR's duty is to search for and release responsive non-exempt

records, and the plaintiff's unsupported assertions neither establish the existence of additional

responsive records nor undermine the good-faith declarations submitted by the agency.  The

Court therefore concludes that the OPR's searches for records responsive to the plaintiff's FOIA

request were reasonable.

### C.  FOIA Exemptions

#### 1.  Exemption 2

Exemption 2 protects information "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2) (2006).  Relying on this exemption, the OPR has withheld "case file numbers, document file path names, fax telephone numbers, and direct dial telephone numbers assigned to specific DOJ staff" as "low 2" exempt information.   Def.'s Mem., Reiersen Decl. ¶ 13; *see generally id.*, Reiersen Decl., Ex. C (*Vaughn* Index).

"For many years, following the [District of Columbia] Circuit's ruling in *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, [670 F.2d 1051 (D.C. Cir. 1981), *abrogated in part by Milner v. Dep't of the Navy*, __ U.S. __, 131 S.Ct. 1259 (2011),] courts held that Exemption 2 protected two categories of information: (1) materials concerning human resources and employee relations (known as 'Low 2'), and (2) 'predominantly internal' information that, if disclosed, would 'significantly risk [ ] circumvention of agency regulations or statutes' (known as 'High 2')."  *Nat'l Day Laborer Org. Network v. U.S. Immigration and Customs Enforcement Agency*, No. 10 Civ. 3488, 2011 WL 2693655, at *4 (S.D.N.Y. July 11, 2011) (footnotes omitted), *amended on recons.*, 2011 WL 3477226 (S.D.N.Y. Aug. 8, 2011).  Information concerning "conditions of employment in federal agencies – such matters as hiring and firing, work rules and discipline, compensation and benefits" – qualified as "low 2" exempt information, *Milner*, __ U.S. at __, 131 S.Ct. at 1265, yet items such as file numbers and office telephone numbers routinely were withheld as "Low 2" exempt material, *see, e.g., Skinner v. U.S. Dep't of Justice*, 744 F. Supp. 2d 185, 201 (D.D.C. 2010) (internal file numbers, case numbers and telephone numbers); *Moayedi v. U.S. Customs and Border Prot.*, 510 F. Supp. 2d 73, 82 (D.D.C.2007)

("'Low 2' materials . . . include . . . 'trivial administrative data such as file numbers, mail routing

stamps, initials, data processing notations, and other administrative markings'") (quoting

*Coleman v. FBI*, 13 F. Supp. 2d 75, 78-79 (D.D.C. 1998)) (other citation omitted).  The *Milner*

holding has restricted the scope of Exemption 2 in a manner "consistent with the plain meaning

of the term 'personnel rules and practices,'" such that it again "encompasses only records

relating to issues of employee relations and human resources."  *Milner*, __ U.S. at __, 131 S.Ct.

at 1271.  "Low 2 is all of 2 (and . . .  High 2 is not 2 at all . . . .)."  *Id.*, __ U.S. at __, 131 S.Ct. at

1265.

       The OPR's supporting declarations were prepared before *Milner* and therefore do not

address whether the case file numbers, document file path names, fax and phone numbers

withheld are related solely to the office's internal personnel rules and practices.  The Court

therefore will deny the defendant's motion for summary judgment in part, and allow the

defendant an opportunity to reconsider its reliance on Exemption 2 in light of *Milner*.

## 2.  Exemption 5

       Exemption 5 protects "inter-agency or intra-agency memorand[a] . . . which would not be

available by law to a party other than an agency in litigation with the agency."  5 U.S.C. §

552(b)(5).  Recognized under Exemption 5 is the deliberative process privilege which "shields . .

. government materials which are both predecisional and deliberative."  *Tax Analysts v. IRS*, 117

F.3d 607, 616 (D.C. Cir. 1997) (internal quotation marks and citations omitted).  "Case law

regarding the deliberative process privilege emphasizes that this exemption is based on the

policy of facilitating a frank exchange of ideas and opinions within agencies in order to ensure

that 'the quality of administrative decisions' does not suffer."  *Hornbeck Offshore Transp., LLC*

*v. U.S. Coast Guard*, No. 04-1724, 2006 WL 696053 at *17 (D.D.C. Mar. 30, 2006) (quoting

*Dudman Commc'ns Corp. v. Dep't. of the Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987)).

The OPR "relie[s] on the Exemption 5 deliberative process privilege to protect

information in one document." Def.'s Mem., Reiersen Decl. ¶ 14. The document is described as

"a predecisional memo from one OPR attorney to her superior recommending action in the

case." *Id.*, Reiersen Decl. ¶ 15. The OPR's declarant explains that Exemption 5 "protects the

internal deliberations of an agency by exempting from release recommendations, analyses,

speculation, drafts, and other non-factual information prepared in anticipation of agency

decision-making." *Id.*, Reiersen Decl. ¶ 15. Disclosure of the memo, the declarant asserts,

"would disclose the decision making process" regarding steps to be taken, or not taken, in

response to the plaintiff's complaint. *Id.*, Reiersen Decl., Ex. C (*Vaughn* Index to Documents

Withheld in Part, Doc. No. OPR-42).

The plaintiff's sole reference to Exemption 5 is an assertion that "the defendant has made

conclusory and generalized allegations . . . for withholding the documents and information

relevant to the investigation findings, and result of the complaint on Jack Fernandez."

Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss In Part,

and Alternatively, for Summary Judgment, with Request for Judgment on the Pleadings ("Pl.'s

First Opp'n") [Dkt. #29] at 15. This bald assertion utterly fails to establish a genuine issue of

material fact as to the defendant's decision to withhold this predecisional memorandum, and the

Court concludes that the OPR properly has withheld the memorandum under Exemption 5.

3.  Exemption 6

The OPR has withheld "the names and identifying information of third parties, including federal employees and private citizens," under Exemption 6 in conjunction with Exemption 7(C), from all the responsive records it located.  Def.'s Mem., Reiersen Decl. ¶ 16; *see generally id.*, Reiersen Decl., Ex. C (*Vaughn* Index).  Because any statement establishing that the responsive records were compiled for law enforcement purposes was absent from its supporting declaration, and such a showing is required for reliance on Exemption 7, the Court will consider the matter as if the OPR relied solely on Exemption 6.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is construed broadly and is "intended to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982) (citation omitted).  "The information in the file 'need not be intimate' for the record to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2011 WL 1743234, at *2 (D.D.C. May 6, 2011) (quoting *New York Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). Information protected under Exemption 6 includes such items as a person's name, address, place of birth, employment history, and telephone number.  *See Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989); *see also Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) (personal e-mail addresses); *Schwaner v. Dep't of the Army*, 696 F. Supp. 2d 77, 82 (D.D.C. 2010) (names, ranks, companies and

addresses of Army personnel).  Once this threshold inquiry is met, the Court employs a

balancing test to determine whether release of such information constitutes a clearly unwarranted

invasion of personal privacy.  *Washington Post Co. v. U.S. Dep't of Health and Human Servs.*,

690 F.2d 252, 260 (D.C. Cir. 1982).  It is the requester's obligation to demonstrate the existence

of a significant public interest in disclosure.  *See Coleman v. Lappin*, 680 F. Supp. 2d 192, 196

(D.D.C. 2010).

The OPR withheld "the names and identifying information of third parties, including

federal employees and private citizens[,]" under Exemption 6.  Def.'s Mem., Reiersen Decl. ¶

16; *see generally id*., Reiersen Decl., Ex. C (*Vaughn* Index).  In addition, it withheld "a subject

name, third party names of both DOJ staff and private parties, duty stations, details of a criminal

case other than the [p]laintiff's case, and one gender specific pronoun."  *Id.*, Reiersen Decl. ¶ 19.

The OPR's declarant explained that "each piece of personally identifiable information was

analyzed to determine the nature and strength of each individual's privacy interest," and then

OPR staff "determined whether there was a public interest in disclosure."  *Id.*, Reiersen Decl. ¶

18.  To this end, the OPR assessed "whether [disclosure of] the information in question would

inform the general public about OPR's performance of its mission and/or whether the

information would shed light on OPR's performance of its statutory duties."  *Id.*, Reiersen Decl.

¶ 18.  In each instance it was determined that the individual privacy interests outweighed any

public interest in disclosure.  *Id.*, Reiersen Decl. ¶ 18.

The plaintiff responds by arguing that "[t]he OPR was under a duty and obligation to

provide [him] the documents relevant to the investigation" of his complaint against AUSA

Fernandez, that the responsive records were not exempt from disclosure or, alternatively, that the

records could have been redacted prior to disclosure.  Pl.'s First Opp'n at 15.  Again, the plaintiff

fails to submit any support for these assertions or otherwise explain the basis of the OPR's

purported duty.  Based on the OPR's submission and absent any showing to the contrary, the

Court concludes that the third-party information described in the OPR's declaration properly was

withheld under Exemption 6.

4.  Exemption 7[7]

a.  Law Enforcement Records

Two DOJ components have withheld information under Exemption 7: the EOUSA and

the DEA.  Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure of such records would cause an

enumerated harm.  5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982).  "To

show that the disputed documents were compiled for law enforcement purposes, the [agency]

need only establish a rational nexus between [an] investigation and one of the agency's law

enforcement duties and a connection between an individual or incident and a possible security

risk or violation of federal law."  *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal

quotation marks and citations omitted).  It is apparent from the content of the plaintiff's FOIA

---

[7]        Although the DEA invokes both Exemptions 6 and 7(C) in withholding "the
names of third-parties and information about them . . . where it was determined that the
individuals' privacy interests were not outweighed by an [sic] public interest in disclosure,"
Def.'s Mem., Little Decl. ¶ 64, the Court will consider only Exemption 7(C).  *Simon v. Dep't of
Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994) (finding that once the Court determines that a FOIA
exemption applies, it need not address whether another exception would "independently justify"
withholding the same information); *see also Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173
(D.C. Cir. 2011) ("If the information withheld here was 'compiled for law enforcement
purposes,' thus implicating Exemption 7(C), then we would have no need to consider Exemption
6 separately because all information that would fall within the scope of Exemption 6 would also
be immune from disclosure under Exemption 7(C).").

requests that the information he seeks was compiled for law enforcement purposes, namely, the

criminal case against him in the Middle District of Florida led by AUSA Fernandez and the

gathering and use of intercepted telephone communications.  As the EOUSA's declarant

represents, the plaintiff's "entire request pertains to criminal investigations," and therefore "the

[responsive] materials were necessarily compiled for law enforcement purposes."  Def.'s Mem.,

Luczynski Decl. ¶ 11.  The EOUSA has satisfied, and the plaintiff does not dispute, its threshold

showing that the records at issue are law enforcement records within the scope of Exemption 7.

Similarly, the content of the plaintiff's request to the DEA, coupled with the DEA's

"investigative jurisdiction derive[d] from the Comprehensive Drug Abuse Prevention and

Control Act of 1970, 21 U.S.C. § 801, *et seq.*," and corresponding authority to "investigat[e] . . .

incidences involving the trafficking in controlled substances," Def.'s Mem., Little Decl. ¶ 65,

supports the defendant's assertion that the responsive records "were compiled during criminal

law enforcement investigations of the plaintiff and several third-parties," *id*., Little Decl. ¶ 66.

The defendant thus meets the threshold showing that the relevant DEA records are law

enforcement records for purposes of Exemption 7.

### b.  Exemption 7(C)

Exemption 7(C) protects from disclosure information in law enforcement records that

"could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5

U.S.C. § 552 (b)(7)(C).  In determining whether this exemption applies to particular material, the

Court must balance the interest in privacy of individuals mentioned in the records against the

public interest in disclosure.  *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C.

Cir. 2007); *Beck v. Dep't of Justice*, 1491 (D.C. Cir. 1993).  The privacy interest at stake belongs

to the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989); *Nat'l Ass'n of Retired Fed. Employees*, 879 F.2d at 875 (noting individual's significant privacy interest "in avoiding the unlimited disclosure of his or her name and address"), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984). "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman*, 494 F.3d at 1115.  It is the requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant. *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The EOUSA has withheld information under Exemption 7(C) "to protect the identity of third-party individuals, such as potential witnesses and law enforcement personnel . . . ."  Def.'s Mem., Luczynski Decl. ¶ 13.  Its declarant explains that "the release [of this information] could subject [them] to an unwarranted invasion of their personal privacy," for example, by leading to "unwanted efforts to gain further access to . . . or personal information about them – or subject them to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences – all to their detriment."  *Id.*, Luczynski Decl. ¶ 13.  Balanced against these interests, the EOUSA finds "no countervailing public interest in the release of this privacy-protected information, because its dissemination would not help explain government activities and operations."  *Id.*, Luczynski Decl. ¶ 14.

Only the names of DEA personnel were redacted from the document located in response to Request No. 04-0669-F.  *Id.*, Little Decl. ¶ 28.  From the records associated with Request No. 09-0285-P, the DEA has redacted "[t]he names and other identifying information which would reveal the identity of and disclose personal information about individuals who were involved or associated with the plaintiff or with a law enforcement investigation."  *Id.*, Little Decl. ¶ 67.

The identities of DEA Special Agents, a DEA staff member, and state/local law enforcement officers" are being withheld because, the declarant explains, release of "their identities and information pertaining [them] . . . in the context of a criminal law enforcement investigatory file" would "place [them] in a position [to] suffer undue invasions of privacy, harassment and humiliation."  *Id.*, Little Decl. ¶ 70.  These individuals "were assigned to handle tasks relating to the official criminal investigation into the criminal activities of the plaintiff and other individuals," and thus have been or currently are "in positions of access to information regarding official law enforcement investigations."  *Id.*, Little Decl. ¶ 71.  According to the defendant, disclosure of their identities could make them "targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations."  *Id.*, Little Decl. ¶ 71.  Similarly, the defendant represents that the government employees who handled tasks related to the criminal investigation of the plaintiff "could become targets of harassing inquires for unauthorized access for information pertaining to ongoing and closed investigations" by virtue of their current or former "positions of access to information regarding official law enforcement investigations."  *Id.*, Little Decl. ¶ 72.  Moreover, in no case did the DEA identify a public interest served by releasing the identities of these third parties.  *Id.*, Little Decl. ¶¶ 71-72.

The plaintiff "does not seek the names of officers or agents, information about informants and their names, private activities of agents or informants, nor information about their personal privacy." Pl.'s Opp'n at 17.  He concedes, then, the propriety of withholding the names of and identifying information about the third parties, among whom are potential witnesses, law enforcement personnel (including DEA Special Agents and state and local law enforcement officers) and a DEA staff member, mentioned in the responsive EOUSA and DEA records.

Notwithstanding this concession, the plaintiff maintains "that crimes, fraud and fraudulent concealment [have] been used to convict him, where his telephone communications were illegally and unlawfully intercepted, used, and disclosed throughout the trial," without the government first having obtained proper authorization to intercept them.  Pl.'s First Opp'n at 5; *see id.* at 12.  He argues that there is a public interest in the disclosure of the requested records in order that "documentation, records, material, and information on crimes and wrong doing committed by officers and agents of the agencies relevant to this case" can be revealed.  *Id.* at 11.  For example, the plaintiff asserts that documents he requested from the EOUSA "related to authorization to intercept [his] telephone com[m]unications" have not been released, *id.* at 13, and he has obtained information from other sources which leads him to believe that no such authorization was ever obtained, *see* Pl.'s Opp'n at 9, 14.

The plaintiff further argues that "the OPR afforded . . . AUSA Jack Fernandez favorable treatment in reference to the complaint he filed . . . related to the crime of illegal and unlawful interception, use, and disclosure of his telephone communications, for the purpose of . . . prosecuting and convicting him."  Pl.'s Opp'n at 13-14.  He argues that there is a public interest in disclosing preferential treatment afforded a federal prosecutor, *see id.* at 14, and that the

public's "strong interest in ascertaining the truth of such serious allegations of government misconduct . . . outweighs the more attenuated privacy interest of a government official," *id.* at 15.  Lastly, the plaintiff demands the release of information pertaining to DEA Special Agents Feeney and VanDorple because it "sheds light on the . . . agents['] handling of the process seeking judicial warrants for interception of telephone communications for investigation of narcotic[s] offenses" as well as "the DEA's performance of its statutory duty," and thus overcomes the agents' privacy interests.  *Id.* at 16.  In short, the plaintiff still demands the disclosure of information pertaining specifically to AUSA Fernandez and DEA Special Agents Feeney and VanDorple, but not information pertaining to any other third parties mentioned in the responsive records.  The plaintiff's arguments are not persuasive.

Generally, the privacy interests of third parties mentioned in law enforcement files are "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Servs.*, 926 F. 2d at 1205; *see Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Branch v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)) (noting that "the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation").  "[U]nless access to the names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute *compelling* evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs.*, 926 F. 2d at 1206 (emphasis added).  A government employee's privacy interest may be diminished by virtue of his government service, *see Stern*, 737 F.2d at 92, but he retains an interest nonetheless.  *See Beck*, 997 F.2d at 1494 ("A government employee has at least some privacy interest in his own

employment records . . . ."); *see Stern*, 737 F.2d at 91 (finding that federal employee "has at least

a minimal privacy interest in his . . . employment history and job performance evaluations"); *see*

*also Kimberlin v. Dep't of Justice*, 139 F.3d 944, 949 (D.C. Cir. 1998).  In particular, a

government employee "has a privacy interest in any file that 'reports on an investigation that

could lead to the employee's discipline or censure.'" *Mueller v. U.S. Dep't of the Air Force*, 63

F. Supp. 2d 738, 742 (E.D. Va. 1999) (citing *Hunt v. FBI*, 972 F.2d 286, 288 (9th Cir. 1992)).

That interest "extends to 'not having it known whether those records contain or do not contain'

information on wrongdoing, whether that information is favorable or not."  *Beck*, 997 F.2d at

1494 (quoting *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 782 (D.C. Cir. 1990)).

It appears that the plaintiff's interest in the requested records is personal in nature – the

subjects of his requests were active participants in the investigation of his criminal activities, the

gathering and use of his intercepted telephone communications, the criminal trial, and the

subsequent complaints he filed against these individuals.  Even if these individuals were engaged

in misconduct as the plaintiff alleges, at most the plaintiff demonstrates possible isolated

incidents which would not amount to a pattern of wrongdoing or pervasive wrongdoing by

EOUSA, OPR, or DEA officials.  In any event, the plaintiff may prevail on his claim of public

interest only if he "produce[s] evidence that would warrant a belief by a reasonable person that

the alleged Government impropriety might have occurred," *Favish*, 541 U.S. at 174, and he

cannot do so with only unsupported assertions and speculation.

c.  Exemption 7(D)

Exemption 7(D) protects from disclosure records or information compiled for law

enforcement purposes that:

27

> could reasonably be expected to disclose the identity of a confidential
> source . . . [who] furnished information on a confidential basis, and,
> in the case of a record or information compiled by a criminal law
> enforcement authority in the course of a criminal investigation . . .,
> information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D).  A confidential source may be an individual, such as a private citizen or

paid informant, or it may be a state, local or foreign law enforcement agency.  *Lesar v. Dep't of*

*Justice*, 636 F.2d 472, 491 (D.C. Cir. 1980).  There is no assumption that a source is confidential

for purposes of Exemption 7(D) solely because the source provides information to a law

enforcement agency in the course of a criminal investigation.  *See U.S. Dep't of Justice v.*

*Landano*, 508 U.S. 165, 181 (1993).  Rather, a source's confidentiality is determined on a case-

by-case basis.  *Id*. at 179-80.  "A source is confidential within the meaning of 7(D) if the source

provided information under an express assurance of confidentiality or in circumstances from

which such an assurance could reasonably be inferred."  *Williams v. FBI*, 69 F.3d 1155, 1159

(D.C. Cir. 1995) (citing *Landano*, 508 U.S. at 170-74).

### i.  Express Assurance of Confidentiality

The declarant describes "[c]oded informants [as] individuals who have a continuing

cooperative association, by written signed agreement, with [the] DEA."  Def.'s Mem., Little

Decl. ¶ 76.  Their relationships with the DEA come about by "cooperative arrangements . . .

established and maintained according to DEA policy and procedure," and these informants "are

expressly assured confidentiality in their identities and the information they provide to [the]

DEA."  *Id.*, Little Decl. ¶ 76.  Their names are "not . . . used in DEA investigative materials";

instead, the DEA refers to these sources either by "an identification code which is used in place

of their name[s]" or by the abbreviation "CI, SOI, or CS."  *Id.*, Little Decl. ¶ 76.  The DEA relies

on Exemption 7(D) "to protect source-identifying and source-supplied investigative information" on the ground that disclosure of "any information that could identify these informants, including the informant identifier codes, could subject them to serious harm, substantial repercussions, and possibly even death."  Def.'s Mem., Little Decl. ¶ 75; *see* Def.'s Renewed Mem., Supp. Little Decl. ¶¶ 6-8.

#### ii.  Implied Assurance of Confidentiality

The DEA's declarant notes that "[t]he plaintiff was arrested for conspiracy to distribute cocaine, and convicted of conspiracy to distribute and the delivery of marijuana."  Def.'s Renewed Mem., Supp. Little Decl. ¶ 10.  Under these circumstances, the declarant asserts that "[i]t is reasonable to infer that individuals who provided information about the plaintiff would fear for their safety, since violence is inherent in the trade in illicit substances such as cocaine and marijuana," particularly because, "[o]n several occasions, the plaintiff and/or his criminal associates were in possession of firearms."  *Id.*, Supp. Little Decl. ¶ 10.

The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists.  *Landano*, 508 U.S. at 179-80; *Quiñon v. FBI*, 86 F.3d 1222, 1231 (D.C. Cir. 1996); *Coleman*, 13 F. Supp. 2d at 82 (finding that plaintiff's conviction "of numerous violent crimes" including murder, rape and kidnaping, as well as "the relation of the witnesses thereto is precisely the type that the implied confidentiality exemption expressed in *Landano* is designed to encompass").  In determining whether the source provided information under an implied assurance of confidentiality, the Court considers "whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source."  *Mays v. DEA.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).

The question has been answered in the affirmative with respect to "the violence and danger that accompany the cocaine trade." *Id.*

In light of the plaintiff's statement that "he does not seek . . . information about informants and their names," Pl.'s Opp'n at 17, the Court treats this statement as a concession that the DEA properly has withheld "source-identifying and source-supplied investigative information," Def.'s Mem., Little Decl. ¶ 75, under Exemption 7(D).

### d.  Exemption 7(F)

The DEA relies on Exemption 7(F) to withhold "the names of DEA Special Agents[] and Supervisory Special Agents[,] an Internal Revenue Service Special Agent, . . . state/local law enforcement officers[,] suspects, third parties and confidential sources."  Def.'s Mem., Little Decl. ¶ 88.  In no instance does the DEA withhold information based exclusively on Exemption 7(F) – it relies either on Exemption 7(C) or Exemption 7(D) in conjunction with Exemption 7(F) to protect the same information.  *Id.*, Little Decl. ¶ 88; *see generally* Def.'s Renewed Mot., Supp. Little Decl., Ex. L (Page Itemization).  Because the same information has been properly withheld under either Exemption 7(C) or 7(D), the Court need not determine whether Exemption 7(F) applies.  *See Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) .

### E.  The Plaintiff's Motion for Relief from Judgment

The plaintiff requests "relief from the judgment dated August 17, 2010, where the [C]ourt dismissed other defendants and granted the defendant[] partial summary judgment, as clear error has occurred and new evidence in support of claims presented exist[s]."  Pl.'s Opp'n at 1. Although the plaintiff relies on Federal Rule of Civil Procedure 60(b), the motion properly is construed as one under Federal Rule of Civil Procedure 54, because the ruling from which he

demands relief is not a judgment, "decree []or any order from which an appeal lies." FED. R.

CIV. P. 54(a).

The Court may revise its own interlocutory decisions "at any time before the entry of

judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV.

P. 54(b); *see also Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

"[I]nterlocutory judgments are . . . subject to the complete power of the court rendering them to

afford such relief from them as justice requires." *Childers v. Slater*, 197 F.R.D. 185, 190

(D.D.C. 2000) (citations omitted).  "[A]sking 'what justice requires' amounts to determining,

within the Court's discretion, whether reconsideration is necessary under the relevant

circumstances." *Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005).  Reconsideration

under Rule 54(b) is warranted where, for example, the Court "has patently misunderstood a

party, has made a decision outside the adversarial issues presented to the Court by the parties,

has made an error not of reasoning but of apprehension, or where a controlling or significant

change in the law or facts [has occurred] since the submission of the issue to the Court." *Cobell

v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (quoting *Bank of Waunakee v. Rochester Cheese

Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (internal quotation marks omitted)).  None of

these circumstances is present here.

Based on his discovery of a sealed case in the United States District Court for the Middle

District of Florida, the plaintiff first argues that the Court's August 17, 2010 decision to dismiss

both the Middle District of Florida and the Clerk of Court for Hillsborough County must be

reversed.  *See* Pl.'s Opp'n at 18-22.  The existence of this sealed case is neither a controlling nor

a significant change in the facts of the plaintiff's case.  As was mentioned previously, neither a

federal district court nor a state court is subject to the FOIA, and the existence of the sealed case has no bearing on this FOIA action.

The plaintiff next contends that the Court's prior ruling with respect to the DEA's refusal to confirm or deny the existence of law enforcement records pertaining to Special Agents Feeney and VanDorple must be reversed. *See* Pl.'s Opp'n at 23. The plaintiff's recent discovery of information pertaining to the agents' resignation, *see id.* at 22-24, does not strip the agents of their privacy interests, and the plaintiff's arguments as to the existence of a public interest of greater magnitude than these individuals' privacy interests, *see id.* at 24-26, are not persuasive.

According to the plaintiff, the Court "committed clear error in failing to comply [with] the presidential executive order in force during the litigation of the present case." *Id.* at 27. The order to which the plaintiff refers actually is a memorandum which generally directs that "[t]he [FOIA] should be administered with a clear presumption: In the face of doubt, openness prevails," even if the disclosure of information might embarrass public officials, reveal government failures, or play upon "speculative or abstract fears." Memorandum of January 21, 2009, 74 Fed. Reg. 4683 (Jan. 26, 2009). The plaintiff ignores the portion of the memorandum which states that it "does not create any right or benefit, substantive or procedural, . . . by any party against the United States, its departments, agencies, or entities." *Id.* This ground for relief is therefore also without merit.

Lastly, the plaintiff finds fault with the Court's conclusion that he failed to exhaust his available administrative remedies with respect to his request to the Federal Tort Claims Act staff. Pl.'s Opp'n at 28; *see Lewis*, 733 F. Supp. 2d at 107. Now that the plaintiff has completed the administrative appeal process, *see* Pl.'s Opp'n at 28-29, he "contends that he is entitled to the

documents he requested . . . and . . . the issue is ripe for ruling at this time." *Id.* at 29. Exhaustion of one's administrative remedies is a prerequisite to filing a lawsuit, *see Wilbur v. Cent. Intelligence Agency,* 355 F.3d 675, 677 (D.C. Cir. 2004) (per curiam), and exhaustion by the plaintiff as to this claim did not occur before this action was initiated.

## III.   CONCLUSION

In summary, the Court concludes that: (1) the EOUSA and the OPR have conducted reasonable searches for records responsive to the plaintiff's FOIA requests; (2) the OPR properly has withheld information under FOIA Exemptions 5 and 6; and (3) the EOUSA and the DEA properly have withheld information under FOIA Exemptions 7(C) and 7(D).  In these respects, the defendant's renewed motion for summary judgment is granted in part.  However, the defendant has not met its burden of showing that it is entitled to summary judgment with respect to (1) the referral of 4 pages of records from the OPR to the EOUSA, and (2) the OPR's reliance on Exemption 2, and their motion is denied in part without prejudice as to these documents.  The Court defers its ruling on segregability.

Finally, the plaintiff has not demonstrated a viable basis for revision of the August 17, 2010 Memorandum Opinion and Order, and his motion for relief from judgment, construed as a motion for revision of an interlocutory ruling under Rule 54(b), is denied.

An Order is issued separately.


REGGIE B. WALTON
United States District Judge

DATE:  November 2, 2011